UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

AMOS SHINKLE and NIKA MOSENTHAL,
individually and on behalf of others similarly
situated,

                   Plaintiffs,

          -v-

HANDY TECHNOLOGIES, INC. and ANGI
HOMESERVICES,

                   Defendants.

-----------------------------------------------------------X

**Case No.** 23-cv-8700

**NOTICE OF REMOVAL**

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK:**

      **PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants HANDY TECHNOLOGIES, INC. ("Handy") and ANGI HOMESERVICES[1] ("Angi") (together, "Defendants"), by and through their counsel, hereby remove the action titled *Amos Shinkle and Nika Mosenthal, individually and on behalf of others similarly situated, v. Handy Technologies, Inc. and Angi Homeservices Inc.*, Index No. 530099/2023, pending in the Supreme Court of the State of New York for the County of Kings (the "Action"), to the United States District Court for the Eastern District of New York, on the following grounds:

## I.    BACKGROUND

      1.      Handy, a wholly-owned subsidiary of Angi, is a platform offering professional referral services for home improvement contractors and cleaners. *See* Complaint ("Compl.") ¶ 2. According to Plaintiffs Amos Shinkle and Nika Mosenthal ("Plaintiffs"), users "book services

---

[1] Plaintiffs named Angi Homeservices as a Defendant in this case; however, Angi Homeservices is now known as Angi Inc.

through Handy's App or Website and are instantly matched and connected to 'top-quality, pre-screened independent service professionals.' Users can sign up for a cleaning plan in which they select frequency, length of commitment, add any extras, and are charged 24 hours before the start of each service. Charges include the cost of cleaning, 'Tip', a 'Trust and Support Fee', and 'Estimated Tax.'" *Id.* ¶ 4.

2.        Plaintiffs allegedly booked a "Home Cleaning" through the Handy platform pursuant to a monthly cleaning plan to which they subscribed. *Id.* ¶ 34.

3.        Plaintiffs contend that Handy's platform connected them with a cleaner who entered their home on April 6, 2023, to perform the services outlined in Plaintiffs' subscription "Cleaning Routine." *Id.* ¶ 36.

4.        According to Plaintiffs, they had left an engagement ring in a drawer in the residence and that engagement ring allegedly was no longer there when they returned home that same day. *Id.* Plaintiffs have concluded without proof that the engagement ring was stolen by the cleaning professional. *Id.*

5.        The cleaning professional did not, and is not alleged to, work for either Handy or Angi.

6.        Plaintiffs subsequently allegedly notified Handy of their suspicions. *Id.* ¶ 40. Handy allegedly responded by offering coverage "in accordance with its 'Handy Happiness Guarantee' within the Defendant's Terms of Use/User Agreement" to which Plaintiffs agreed to be bound. *Id.* The Terms of Use/User Agreement provide "that a 'Service Requester' may be compensated 'up to USD $2,500, in the aggregate, for losses arising from theft of a Requester's property by a Professional during performance of a Professional Service.'" *Id.*

7.      Despite having previously agreed to these terms and limitations, Plaintiffs were not satisfied with the solution and ultimately filed a putative class action complaint for damages in the Supreme Court of the State of New York for the County of Kings (the "Complaint").

8.      In addition to seeking to recover the alleged value of the alleged engagement ring, Plaintiffs seek disgorgement of various fees charged by Handy's platform, claiming that users have been fraudulently induced to pay these fees, among other allegations.  *Id.* ¶¶ 82, 88, 97.

9.      Plaintiffs purport to represent a putative class consisting of "similarly situated consumers who use, and/or have used. The App and/or Website, to be matched with Pros through the Defendant's platform, Handy."  *Id.* ¶ 55.

10.     The Complaint alleges seven causes of action: (1) violations of New York's Consumer Protection Act (N.Y. Gen. Bus. Law §§ 349 and 350); (2) violations of the New York City Administrative Code: Title 20 (N.Y.C. Admin. Code § 20-700); (3) negligence; (4) fraud; (5) unjust enrichment; (6) property damage/loss; and (7) negligent infliction of emotional harm.

11.     Plaintiffs filed the Action as an unlimited civil case (*i.e.*, a matter that exceeds $25,000) that seeks actual and enhanced damages.

## II.     REMOVAL IS TIMELY

12.     On October 18, 2023, Plaintiffs filed the Complaint in the Supreme Court of the State of New York, County of Kings.

13.     Plaintiffs' as-filed Complaint, upon information and belief, did not include the exhibits that purport to be attached to the Complaint.

14.     Plaintiffs attempted to serve the Complaint on October 26, 2023, however, the purported service copy also did not include exhibits.

15.     Pursuant to 28 U.S.C. § 1446(a), attached hereto as **Exhibit A** is a true and correct copy of the Complaint and all accompanying documents served upon Defendants in the Action. These exhibits were eventually provided via email on November 22, 2023 and included in Exhibit A.

16.     Defendants reserve all rights with respect to Plaintiffs' attempt to serve the Complaint; however, the earliest date of service is October 26, 2023.  Because this Notice of Removal is filed within 30 days of that date, it is timely under 28 U.S.C. §§ 1446(b) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

17.     Additionally, this notice is timely because it is filed within one year after commencement of the action pursuant to pursuant to 28 U.S.C. § 1446(c)(1).

18.     No previous Notice of Removal has been filed or made with this Court for the relief sought in this removal notice.

## III.    THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

19.     Plaintiffs seek to bring this Action as a putative class action under Article Nine of the New York Civil Practice Law and Rules.  *See* Exh. A, Compl., ¶ 54.  Removal based on diversity jurisdiction under the Class Action Fairness Act ("CAFA") is proper where (i) the aggregate number of putative class members is 100 or greater; (ii) minimal diversity of citizenship exists between Plaintiffs and Defendants; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453.

20.     Defendants deny Plaintiffs' factual allegations and deny that Plaintiffs, or the class they purport to represent, are entitled to the relief requested; however, based on Plaintiffs' allegations in the Complaint and their prayers for relief, all requirements for jurisdiction under

CAFA have been met.  Accordingly, diversity of citizenship exists under CAFA, and this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

### A.    The Putative Class Has More Than 100 Members.

21.    Plaintiffs allege that "the putative class is so numerous that joinder of all members is impracticable."  Exh. A, Compl., ¶ 56.  Plaintiffs assert claims on behalf of a putative class comprised of "similarly situated consumers who use, and/or have used, the App and/or Website, to be matched with Pros through the Defendants platform, Handy."  *Id.*, ¶ 55.

22.    Plaintiffs do not attempt to estimate the size of what appears to be the putative nationwide class, but use the number of putative class members in New York as a proxy.  They allege "there are currently 32,360 'Active Pros in New York'"" with the putative class consisting of a multiple of the number of service providers in the state.  *Id.*, ¶ 56.  The class therefore far exceeds 100 putative members, satisfying the first element of CAFA's removal test.

### B.    Diversity of Citizenship Exists.

23.    To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists; that is, one putative class member is a citizen of a state different from that of one defendant.  28 U.S.C. § 1332(d)(2); *Abraham v Am. Home Mortg. Servicing, Inc.*, 947 F Supp 2d 222, 231-32 (EDNY 2013).

24.    Plaintiffs allege that they are citizens and residents of New York.  Exh. A, Compl., ¶¶ 12-13.

25.    Pursuant to 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place

where a corporation's officers direct, control, and coordinate the corporation's activities….[I]n practice it should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

26.      For diversity purposes, a corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business.   28 U.S.C. § 1332(c)(1).

27.      Defendant Angi is incorporated under the laws of the State of Delaware and has its principal place of business in the State of Colorado.  Exh. A, Compl., ¶ 32.

28.      Defendant Handy, a wholly owned subsidiary of Angi, is incorporated under the laws of the State of Delaware and has its principal place of business in New York.

29.      Accordingly, Defendant Angi (Delaware and Colorado) is a citizen of a state other than New York for diversity purposes.  28 U.S.C. § 1332(c)(1).

30.      Consequently, at least one member of the putative plaintiff class, i.e., the two named Plaintiffs, are citizens of a State different from at least one Defendant (Angi).

31.      Moreover, from the face of the Complaint, it appears Plaintiffs intend the putative class to be national in scope and not limited to New York.  The Complaint states that the putative class consists of "similarly situated consumers who use, and/or have used. The App and/or Website, to be matched with Pros through the Defendant's platform, Handy."  Exh. A, Compl., ¶ 55.  Whereas Plaintiffs seek to represent a nationwide putative class, there is diversity between any class member who is a citizen of any state other than Delaware and Colorado (for Angi) and Delaware and New York (for Handy).

32.     Minimal diversity is satisfied, and diversity jurisdiction exists under CAFA both at the time of the Complaint and of removal.  28 U.S.C. § 1332(d)(2)(A) (requiring only minimal diversity under which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

**C.      The Amount In Controversy Exceeds $5,000,000.**

33.     Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(6).  A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).  "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."  Senate Judiciary Report, S. REP. 109-14, at 42 (2005).

34.     Although Defendants deny Plaintiffs' factual allegations and deny that Plaintiffs, or the putative class they seek to represent, are entitled to the relief for which they have prayed, as detailed below, Plaintiffs' allegations and prayer for relief have more likely than not put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).

35.     While Plaintiffs do not expressly plead a specific amount of damages, Plaintiffs seek to represent a putative class comprised of "similarly situated consumers who use, and/or have used, the App and/or Website, to be matched with Pros through the Defendants platform, Handy." Exh. A, Compl., ¶ 55.  Plaintiffs allege that "there are currently 32,360 'Active Pros in New York'"

with the proposed class containing some number of users being matched to each.  The proposed class, a multiple of that number, would comprise thousands of members.  *Id.*, ¶ 56.

36.     Plaintiffs seek damages on seven causes of action, in an amount exceeding the monetary jurisdictional limits of all lower courts, including enhanced damages for several of the claims, as well as interest, costs and disbursements of the action, and other further relief of the Court.  *Id.*, ¶ 106 at Prayer(A)-(H).

37.     Plaintiffs make multiple allegations that users have been induced to pay various fees including "cost of the cleaning, 'Tip', a 'Trust and Support Fee', and 'Estimated Tax'."  *Id.*, ¶ 4.

38.     Additionally, in Plaintiffs' Fifth Cause of Action alleging Unjust Enrichment, Plaintiffs allege that they "purchased services offered by Defendants for which the Plaintiffs paid additional fees…which were not disclosure [*sic*] and/or properly disclosed, and were unlawfully and unjustly retained by Defendants."  *Id.*, ¶ 94.

39.     Plaintiffs allege that each fee collected would be "separate violations of New York's Consumer Protection Act and General Business Law §§ 349 and 350."  *Id.*, ¶ 6.

40.     Plaintiffs therefore appear to seek reimbursement of all or part of fees collected by Defendants for services rendered in New York.

41.     Even a class consisting of only 32,360 New York class members (which is a low estimate by Plaintiffs' standards) would require an award of only approximately $155.00 per class member to satisfy CAFA. That figure reduces significantly when accounting for the putative nationwide class.

42.     Plaintiffs' circumstances plausibly demonstrate this amount is satisfied.  According to Exhibit A of their Complaint, they were charged and seek reimbursement of a $20.00 "Tip" and

a $5.00 "Trust & Support Fee" for services that repeated every 4 weeks.  Assuming 12 services a year puts at issue $300 for one year for these Plaintiffs (25 x 12).

43.     Defendants further state that revenue from its services in New York alone well exceeds $5 million during the putative class period, and even exceeded that amount on an annual basis for multiple years within the proposed class period.

44.     An award of disgorgement of a portion of these fees, therefore, plausibly places more than $5 million in controversy without accounting for Plaintiffs' requests for additional relief, such as enhanced damages.

45.     Moreover, Plaintiffs seek an award of attorneys' fees.  Exh. A, Compl., ¶ 92. Defendants deny Plaintiffs' entitlement to attorneys' fees, but note that attorneys' fees could further add to the jurisdictional amount.  *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 298 (E.D.N.Y. 2005) (explaining that attorney's fees "can be considered as part of the amount in controversy where they are anticipated or awarded in the governing statute").

46.     Consequently, the amount in controversy requirement under CAFA is satisfied.

IV.     **VENUE**

47.     This action was originally filed in the Superior Court for the County of Kings. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

V.     **CONSENT**

48.     Each defendant that has been properly joined and served consents to removal as required by 28 U.S.C. § 1446(b)(2), including as indicated by Defendants' joint filing of this Notice of Removal.

## VI.    NOTICE

49.    Defendants will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VII.    CONCLUSION

50.    Based on the foregoing, Defendants request that this action be removed to this Court.  If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is subject to removal.

Dated: New York, New York          MORGAN, LEWIS & BOCKIUS LLP
       November 24, 2023


                                   By:   /s/ Grant R. MacQueen
                                       Grant R. MacQueen
                                       101 Park Avenue
                                       New York, NY  10178
                                       Tel.:  +1.212.309.6000
                                       Fax:  +1.212.309.6001
                                       grant.macqueen@morganlewis.com

                                       Attorneys for Defendants
                                       ANGI INC. and HANDY TECHNOLOGIES,
                                       INC.